CENTER FOR DISABILITY ACCESS
Chris Carson, Esq., SBN 280048
Phyl Grace, Esq., SBN 171771
Russell Handy, Esq., SBN 195058
Elliott Montgomery, Esq., SBN 279451
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
ElliottM@potterhandy.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer**,<br><br>        Plaintiff,<br><br>    v.<br><br>**Badger Co., LLC,** a California Limited Liability Company; **David Anthony Gligora**; and Does 1-10,<br><br>        Defendants. | **Case No**. 3:18-cv-00934-LAB-AGS<br><br>**Plaintiff's Opposition to Defense Motion to Dismiss First Amended Complaint**<br><br>Date:    July 15, 2019<br>Time:    11:15 a.m.<br><br>**Hon. Larry A. Burns**<br><br><br> *No Oral Argument Unless Ordered by the Court* |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ........................................................ iii

MEMORANDUM OF POINTS AND AUTHORITIES ........................ 1

   I.    Preliminary Statement ................................................. 1

   II.   The First Amended Complaint Is Sufficiently Pled ................... 1

   III.  Badger Co., LLC and David Anthony Gligora ignore the
       deferential standard given to pleading language and
       demands detailed facts that are not required in a first
       amended complaint ................................................... 7

   IV.  Badger Co., LLC and David Anthony Gligora's argument
       about "control" misconstrues the law ............................. 9

   V.   Langer is a profoundly disabled person and an active ADA
       litigator who personally encountered a blatant parking
       violation at Dave's Tavern bar and who has declared
       that he intends to return to the bar but is deterred from
       returning until the bar is fully compliant. There can be
       no doubt that Langer has met the broad and liberal test
       for standing in ADA cases .......................................... 11

   A.   Langer suffered an injury in fact because he personally
       encountered inaccessible parking at the Dave's Tavern
       bar in April 2018. .................................................. 12

   B.   Langer has standing to obtain injunctive relief because he
       is deterred from returning to the bar until the unlawful
       barriers are removed. ............................................... 14

   VI.  There is no basis for the court to decline supplemental
       jurisdiction over the Unruh claim .................................. 16

   VII. Badger Co., LLC and David Anthony Gligora's reliance
       upon *Cuddeback* is a mistake. The *Cuddeback* ruling

i

was on an *unopposed* motion and is both replete with
error and distinguishable ........................................................ 20

VIII. Conclusion ................................................................. 22

Opposition to Motion to Dismiss                    Case: 3:18-cv-00934-LAB-AGS

# TABLE OF AUTHORITIES

**Cases**

*Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*
603 F.3d 666 (9th Cir. 2010) ................................................................. 1

*Baker v. Palo Alto University, Inc.,*
2014 WL 631452 (N.D. Cal., 2014) ............................................. 17

*Bell Atlantic Corp. v. Twombly,*
550 US 544 (2007) ............................................................................. 7, 8

*Borough of W. Mifflin v. Lancaster,*
45 F.3d 780 (3d Cir. 1995) ................................................................. 18

*Botosan v. Paul McNally Realty,*
216 F.3d 827 (9th Cir. 2000) ........................................................... 11

*Braden v. Wal–Mart Stores, Inc.,*
588 F3d 585 (8th Cir. 2009) ............................................................... 7

*Braden v. Wal–Mart Stores, Inc.,*
588 F3d 585 (8th Cir. 2009) ............................................................... 7

*Burks v. Poppy Construction Co.,*
57 Cal.2d 463, (1962) ......................................................................... 18

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
631 F.3d 939 (9th Cir. 2011) ......................................................... 2, 12

*City of Chicago v. Int'l College of Surgeons,*
522 U.S. 156 (1997) ........................................................................... 15

*Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.,*
867 F.3d 1093 (9th Cir. 2017) ......................................................... 13

*Daenzer v. Wayland Ford, Inc.,*
193 F. Supp. 2d 1030 (W.D. Mich. 2002) ..................................... 18

*Delgado v. Orchard Supply Hardware Corp.,*
826 F. Supp.2d 1208 (E.D. Cal. 2011) ........................................... 17

Opposition to Motion to Dismiss    Case: 3:18-cv-00934-LAB-AGS

*D'Lil v. Best Western Encina Lodge & Suites*,
    538 F.3d 1031 (9th Cir. 2008) ...................................................... 14

*Doe v. Abington Friends School*,
    480 F.3d 252 (3rd Cir. 2007) ....................................................... 9

*Doe v. Abington Friends School*,
    480 F.3d 252 (3rd Cir. 2007) ....................................................... 9

*Doran v. 7-Eleven, Inc.*,
    524 F.3d 1034 (9th Cir. 2008) ...................................................... 14

*Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of*
    *Cal.*,
    24 F.3d 1545 (9th Cir. 1994) ....................................................... 15

*Graf v. Elgin, J. & E. Ry.*,
    790 F.2d 1341 (7th Cir.1986) ...................................................... 16

*In Munson v. Del Taco, Inc.*,
    46 Cal. 4th 661 (2009) ............................................................... 21

*Independent Living Resources v. Oregon Arena Corp.*,
    982 F.Supp. 698 (D.Oregon 1997) ................................................ 11

*Kuba v. 1-A Agr. Ass'n*,
    387 F.3d 850 (9th Cir. 2004) ....................................................... 15

*Moeller v. Taco Bell Corp.*
    816 F.Supp.2d 831 (N.D. Cal. 2011) ............................................. 2

*Peloza v. Capistrano Unified Sch. Dist.*,
    37 F.3d 517 (9th Cir. 1994) ......................................................... 7

*Rosado v. Wyman*,
    397 U.S. 397 (1970) ................................................................... 16

*Schoors v. Seaport Village Operating Co., LLC*,
    2017 WL 1807954 (S.D. Cal. 2017) ............................................. 19

iv

*Schutza v. Cuddeback*,

    262 F. Supp. 3d 1025 (S.D. Cal. 2017)..................................... 19, 20

*Skaff v. Meridien North America Beverly Hills, LLC*,

   506 F.3d 832 (9th Cir. 2007)......................................................... 8, 9

*Trafficante v. Metro. Life Ins. Co.*,

    409 U.S. 205 (1972) ....................................................................... 14

*United Mine Workers of Am. v. Gibbs*,

    383 U.S. 715 (1966) ....................................................................... 16

*United Mine Workers of Am. v. Gibbs*,

    383 U.S. 715 (1966) ....................................................................... 15

**Statutes**

28 C.F.R. § 36.201(b) ............................................................................ 10

28 U.S.C. § 1367 ................................................................................... 15

28 U.S.C. § 1367(c) ............................................................................... 15

42 U.S.C. § 12183(a)(2) ........................................................................... 2

42 U.S.C. § 12188(a) ................................................................................ 2

42 U.S.C. §§ 12183(a)(2) .......................................................................... 2

Cal. Civ. Code § 51(f) ........................................................................... 16

Cal. Civ. Code § 55.56(e) ...................................................................... 20

**Other Authorities**

Department of Justice, Technical Assistance Manual on the American

   With Disabilities Act (BNA) §§ III-1.2000 (1994) ........................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. Preliminary Statement

Defendants Badger Co., LLC and David Anthony Gligora move for dismissal of the First Amended Complaint on the basis that it fails to state a claim. Defendants argue that the first amended complaint has nothing more than legal conclusions unsupported by sufficient facts and that Langer fails to establish standing because the First Amended Complaint does not plead an injury-in-fact and redressability. The Defendants are wrong. As discussed below, the First Amended Complaint contains sufficient factual allegations and Langer's pleading is sound.

### II. The First Amended Complaint Is Sufficiently Pled

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and give "the defendant fair notice of what the . . . claim is and grounds upon which it rests" in compliance with Rule 8(a) of the Federal Rules of Civil Procedure. In order to determine whether a pleading contains the necessary allegations, a party must understand what constitutes a viable claim under the cause of action pled.

Here, Langer's claims are based on Title III of the ADA. To succeed on a Title III ADA architectural barrier claim, "a plaintiff must show that: (1) he is disabled . . . (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations" because of his disability.[1] "The third element—whether plaintiffs were denied public accommodations on the

---

[1] *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).

basis of disability—is met if there was a violation of applicable accessibility standards."[2] This is because discrimination is defined both as either a failure to ensure that alterations are "readily accessible to and useable by persons with disabilities"[3] and, where there are no alterations, "a failure to remove architectural barriers…in existing facilities…where such removal is readily achievable."[4]

Thus, the following is a simplified statement of the elements necessary for Langer to allege under this section:

1. Langer must be disabled.

2. Badger Co., LLC and David Anthony Gligora's facility must be a place of "public accommodation" and, therefore, governed by Title III of the ADA.

3. Badger Co., LLC and David Anthony Gligora must be responsible parties, i.e., owners, operators, lessors or lessees;

4. Badger Co., LLC and David Anthony Gligora's facility must have either undergone an alteration that did not comply with the access standards or contain an easily removed barrier that the defendants failed to remove;

5. Langer must have actually encountered this non-removed and unlawful barrier;

6. The barrier must continue to impact Langer because either (1) he will return and face it again or (2) Langer is being deterred from returning because of his knowledge of the barrier.

As demonstrated by the table below, Langer has made all the necessary factual and legal allegations required to state a claim.

---

[2] *Moeller v. Taco Bell Corp.*, 816 F.Supp.2d 831, 847 (N.D. Cal. 2011) *citing*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011)
[3] 42 U.S.C. § 12183(a)(2)
[4] 42 U.S.C. § 12182(b)(2)(A)(iv)

Opposition to Motion to Dismiss          Case: 3:18-cv-00934-LAB-AGS

| Element | Fact Alleged |
|---------|--------------|
| 1. Disability | "Plaintiff is a California resident with physical disabilities. He is a paraplegic who cannot walk and who uses a wheelchair for mobility. He has a specially equipped van with a ramp that deploys out of the passenger side of his van and he has a Disabled Person Parking Placard issued to him by the State of California."<br><br>• (First Amended Complaint, p. ¶ 1). |
| 2. Place of Public Accommodation | "The Bar is a facility open to the public, a place of public accommodation, and a business establishment."<br><br>• (First Amended Complaint, p. ¶ 13). |
| 3. Responsible Parties | "Defendant Badger Co., LLC owned the real property located at or about 2263 Garnet Avenue, San Diego, California, in April 2018 where the Dave's Tavern is located.<br><br>On information and belief, Defendant Badger Co., LLC leased or rented the facility housing Dave's Tavern to Defendant David Anthony Gligoria in April of 2018.<br><br>Defendant Badger Co., LLC owns the real property located at or about 2263 Garnet Avenue, San Diego, |

| | |
|---|---|
| | California, currently where the Dave's Tavern is located. |
| | On information and belief, Defendant Badger Co., LLC leases or rents the facility housing Dave's Tavern to Defendant David Anthony Gligoria. |
| | Defendant David Anthony Gligora owned and operated the Dave's Tavern located at or about 2263 Garnet Avenue, San Diego, California, in April 2018. |
| | Defendant David Anthony Gligora currently owns and operates the Dave's Tavern bar ("Bar") located at or about 2263 Garnet Avenue, San Diego, California." |
| | • (First Amended Complaint, ¶¶ 2-7). |
| 4. Plaintiff's Encounter with Barriers. | "Plaintiff went to the Bar in April 2018 to have a beer. |
| | Parking spaces are one of the facilities, privileges, and advantages offered by Defendants to patrons of the Bar. |
| | Unfortunately, even though there was a parking space marked and reserved for persons with disabilities in the parking lot where the Bar is |

located during Plaintiff's visit, the parking stall and access aisle reserved for persons with disabilities were not level with each other. The plaintiff could see significant slopes and swells within the parking stall and its access aisle, including a drainage swale that ran right through the reserved parking stall and its stall.

The plaintiff has decades of experience parking and transitioning from his van to parking lot surfaces with the use of his van ramp. Slopes that exceed 2% create some difficulty for the plaintiff with positioning his ramp and rolling down and up the ramp and that difficulty increases as the slope increases. Here the slope was significant and visible, and plaintiff was deterred from further attempt to park due to his sure knowledge that the slopes within the reserved parking space would create significant difficulty for him.

Plaintiff later learned, based on a subsequent investigation by his attorney's investigator, that the slopes ranged as high as 15% within that parking space.

On information and belief, the parking stall and access aisle are not level with each other and there are inaccessible slopes in both the access aisle and

| | |
|---|---|
| | parking stall. |
| | Plaintiff actually encountered the parking violation and has been deterred from returning to the Bar on a number of specific occasions due to his knowledge of the parking issue and the barriers found within the Bar" |
| | • (First Amended Complaint, ¶¶ 12, 14-18, 53). |
| 5. The Barriers are Readily Achievable to Remove | "The barriers identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable." |
| | • First Amended Complaint, ¶ 29) |
| 6. Plaintiff is deterred from returning. | "Plaintiff plans to return as a customer of the Bar, to buy a beer and to reassess the Bar for compliance with the access laws. He will face discriminatory and unlawful barriers it the unlawful barriers are not removed. He is currently deterred from returning to the bar because of his knowledge of the barriers. In fact, the plaintiff has been in the Bar's neighborhood on numerous occasions over the last year and would have patronized the bar but was |

6

| | deterred from doing so because of his knowledge of both the parking violations and the barriers inside the Bar." |
| | • First Amended Complaint ¶ 28). |

Each of the required factual allegations have been made.

### III. Badger Co., LLC and David Anthony Gligora ignore the deferential standard given to pleading language and demands detailed facts that are not required in a first amended complaint.

On a motion to dismiss under Rule 12(b)(6), the Court is required to "read the complaint charitably, to take all well-pleaded facts as true, and to assume that all general allegations embrace whatever specific facts might be necessary to support them."[5] All reasonable inferences from the facts alleged are drawn in a plaintiff's favor in determining whether the complaint states a valid claim.[6] The Court must accept as true all material factual allegations in the complaint: "Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations."[7]

Badger Co., LLC and David Anthony Gligora's arguments urge the court to reject this charitable and deferential pleading standard in favor of a hyper-critical reading. For example, although the first amended complaint alleges that the Bar is a business, open and n to the public, and that Langer went there to have a beer,[8] Badger Co., LLC and David Anthony Gligora argue that the first amended complaint is deficient

---

[5] *Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517, 521 (9th Cir. 1994).
[6] *Braden v. Wal–Mart Stores, Inc.*, 588 F3d 585, 595 (8th Cir. 2009).
[7] *Bell Atlantic Corp. v. Twombly*, 550 US 544, 556 (2007) (internal quotes omitted).
[8] First Amended Complaint, ¶¶ 12-13.

Opposition to Motion to Dismiss     Case: 3:18-cv-00934-LAB-AGS

because Langer does not allege that "the Bar is open to all-comers,"[9] that "Plaintiff had permission"[10] to enter the Bar or whether the Bar "would accept solicitors who randomly come in off the street."[11] But such detailed level of factual allegations is not required.

Once "sufficient factual matter, accepted as true" has been alleged to state a plausible claim, the complaint is sufficient because "the Federal Rules eliminated the cumbersome requirement that a claimant 'set out in detail the facts upon which he bases his claim.'"[12] "[C]oncerns about specificity in a complaint are normally handled by the array of discovery devices available to the defendant."[13] In *Skaff*, the Ninth Circuit was faced with a challenge to the specificity of the complaint and noted that there are plenty of discovery vehicles available to a defendant who wishes to explore the factual underpinning of a plaintiff's ADA case:

> Le Meridien could have asked Skaff formally what barriers he had encountered, where they were in the hotel, when he encountered them, what he did about it, whether any person was present when he encountered the barriers, and, for each barrier, what damages he claimed to have suffered. If Le Meridien believed that Skaff gave conclusory answers to interrogatories on this score, Le Meridien was free to move to compel more complete answers pursuant to Rule 37 in light of what is relevant during discovery under Rule 26. Le Meridien also had the option of taking Skaff's deposition pursuant to Rule 27 and inquiring on such points, testing his credibility with cross-examination. Le Meridien could also have sent requests for admission, pursuant to Rule 36, asking, for example, for conclusive admissions that Skaff had not encountered barriers not identified by him in interrogatories or deposition.

> [*Skaff, supra*, 506 F.3d at 842.]

---

[9] Defs. PNA (Docket Entry 12-1), p. 16, line 11-13
[10] Defs. PNA (Docket Entry 12-1), p. 16, line 14
[11] Defs. PNA (Docket Entry 12-1), p. 16, lines 16-17
[12] *Twombly, supra*, 550 U.S. at 556.
[13] *Skaff v. Meridien North America Beverly Hills, LLC*, 506 F.3d 832, 842 (9th Cir. 2007)

Opposition to Motion to Dismiss          Case: 3:18-cv-00934-LAB-AGS

The *Skaff* court concluded that, "when notice of a claim is given that satisfies Rule 8, concerns about specificity in a complaint are properly addressed through discovery devices under Rules 26, 27, 33, and 36, and, if applicable, the pre-trial order entered pursuant to Rule 16."[14] Reliance upon discovery tools instead of rounds of pleadings has become the favored approach. "Rather than endless pleadings served back and forth ad infinitum . . . that had characterized common law litigation, modern civil procedure instead relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims")[15]

## IV. Badger Co., LLC and David Anthony Gligora's argument about "control" misconstrues the law.

Badger Co., LLC and David Anthony Gligora argue that the first amended complaint is deficient because Langer fails to allege that David Anthony Gligora had sufficient "control" over the areas of the property where the ADA violations exist or that Badger Co., LLC had "legal authority to dictate" to Dave's Tavern bar how it should maintain parking.[16] But Langer does not need to so allege. While the issue of "control" is quite relevant when determining who "operates" a place of public accommodation—and can, therefore, be responsible—Langer bases his claim on the fact that David Anthony Gligora is the *owner* of the place of public accommodation. *Badger Co., LLC owns the property*. Under the ADA, it is not only "operators" but owners, lessors and lessees who are responsible to ensure ADA compliance.[17] And it simply does not

---

[14] *Skaff*, *supra*, 506 F.3d at 842

[15] *Doe v. Abington Friends School*, 480 F.3d 252, 256 -257 (3rd Cir. 2007) (internal citations omitted)

[16] Defs. PNA (Docket Entry 12-1), p. 14, lines 24-28; p. 15, lines 1-2.

[17] 42 U.S.C. § 12182(a).

Opposition to Motion to Dismiss      Case: 3:18-cv-00934-LAB-AGS

matter if Badger Co., LLC contracted away responsibility or the ability to "dictate" how its property is maintained.

The Code of Federal Regulations implementing Title III of the ADA states: "*Both* the landlord who owns the building . . . and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part."[18] The Technical Assistance Manual to Title III, promulgated by the Department of Justice under the authority of section 506 of the ADA, states the following:

> *Do both a landlord who leases space in a building to a tenant and the tenant who operates a place of public accommodation have responsibilities under the ADA?*
>
> Both the landlord and the tenant are public accommodations and have full responsibility for complying with all ADA title III requirements applicable to that place of public accommodation. The title III regulation permits the landlord and the tenant to allocate responsibility, in the lease, for complying with particular provisions of the regulation. However, any allocation made in a lease or other contract is **only effective as between the parties, and both landlord and tenant remain fully liable for compliance** with all provisions of the ADA relating to that place of public accommodation.
>
> [Department of Justice, Technical Assistance Manual on the American With Disabilities Act (BNA) §§ III-1.2000 (1994) (emphasis added).]

As one federal court in this Circuit pointed out, there are "practical considerations" that support holding the landlord liable:

> A customer should not have to obtain a copy of the lease and other contracts in order to determine who is the proper defendant. The customer should be able to bring an action, and let the tenant and landlord fight among themselves over who is responsible to pay for any required improvements. From an enforcement standpoint, making the landlord liable for the tenant's violations effectively enlists the landlord's help in monitoring compliance on its premises, a task for which DOJ lacks the resources to accomplish by itself.
>
> [*Independent Living Resources v. Oregon Arena Corp.*, 982 F.Supp. 698, 768 (D.Oregon 1997).]

---

[18] 28 C.F.R. § 36.201(b) (emphasis added).

10

Finally, and most importantly, the Ninth Circuit extensively discussed this identical issue and held that the landlord is *fully responsible for all violations within its tenants facilities*--no matter what a lease agreement says.[19]

So, Langer does *not* have to allege that Badger Co., LLC, the property owner, needed to retain the legal authority to "dictate" to Dave's how the property was to be maintained. Badger Co., LLC, as the property owner, has an independent legal obligation to comply with Title III of the ADA.

**V.  Langer is a profoundly disabled person and an active ADA litigator who personally encountered a blatant parking violation at Dave's Tavern bar and who has declared that he intends to return to the bar but is deterred from returning until the bar is fully compliant. There can be no doubt that Langer has met the broad and liberal test for standing in ADA cases**

Given the generous and broad standing requirement for ADA cases, it is remarkable that the defendants are raising a standing challenge in this case. Decades ago, the Supreme Court held that in civil rights cases—especially where private enforcement suits are the primary method of obtaining compliance—standing must be given a "generous construction" and defined "as broadly as is permitted by Article III of the Constitution."[20] The Ninth Circuit has expressly applied this holding to ADA cases: "The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act."[21]

---

[19] *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832-34 (9th Cir. 2000) (a case incidentally prosecuted by plaintiff's counsel).

[20] *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 & 212 (1972).

[21] *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1039 -1040 (9th Cir. 2008).

Whenever ADA standing challenges have come before the courts, this has been a guiding principle. "Article III standing should likewise be construed as broadly as possible."[22] "[T]he ADA, the Unruh Act, and the DPA require the court to *construe standing liberally* . . . The ADA, the Unruh Act, and the DPA have granted private citizens a *broad right* to enforce their mandates."[23]

With respect to ADA-architectural-barrier cases, the Ninth Circuit has grappled with standing issues on numerous occasions and laid down a healthy body of published case law. The most significant of Ninth Circuit rulings on the topic is *Chapman v. Pier 1 Imports*,[24] which was decided by an en banc panel. *Chapman* holds that an ADA plaintiff: (1) "must demonstrate that he has suffered an injury-in-fact," and (to obtain injunctive relief), (2) demonstrate a "real and immediate threat of repeated injury" in the future.[25] Langer will discuss and apply each element to the facts of the present case.

### A. Langer suffered an injury in fact because he personally encountered inaccessible parking at the Dave's Tavern bar in April 2018.

Under the ADA, the general rule is that persons with disabilities are entitled to "full and equal enjoyment" of facilities, privileges and accommodations offered by places of public accommodation.[26] A specific act of discrimination is the "failure to remove architectural barriers" that are readily achievable to remove.[27] The *Chapman* court held, therefore, a

---

[22] *Wilson v. Pier 1 Imports (US), Inc.*, 413 F. Supp. 2d 1130, 1133 (E.D. Cal. 2006).
[23] *Natl. Fedn. of the Blind of California v. Uber Techs., Inc.*, 103 F. Supp. 3d 1073, 1084 (N.D. Cal. 2015) (emphasis added).
[24] *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939 (9th Cir. 2011).
[25] *Chapman*, supra, 631 F.3d at 946.
[26] 42 U.S.C. § 12182(a).
[27] 42 U.S.C. § 12182(b)(2)(A)(iv).

12

Opposition to Motion to Dismiss       Case: 3:18-cv-00934-LAB-AGS

plaintiff's rights are violated under the ADA "when a disabled person encounters an accessibility barrier [that] interferes with the plaintiff's full and equal enjoyment of the facility."[28]

But what constitutes a barrier that interferes with full and equal enjoyment? *Chapman* answered this question definitively: "Because the ADAAG establishes the technical standards required for 'full and equal enjoyment,' if a barrier violating these standards relates to a plaintiff's disability, *it will impair* the plaintiff's full and equal access, which constitutes 'discrimination' under the ADA. That discrimination satisfies the 'injury-in-fact' element . . . ."[29] This is an *objective* test:

A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. Indeed, by establishing a national standard for minimum levels of accessibility in all new facilities, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement. [*Chapman*, supra, 631 F.3d at 948, fn. 5 (internal cites and quotes omitted for readability).]

In the present case, Langer went to Dave's Tavern bar in April 2018 to have a beer.[30] He found that the defendants did not provide accessible parking in conformance with the ADA Standards.

---

[28] *Chapman*, supra, 631 F.3d at 947.
[29] *Chapman*, supra, 631 F.3d at 947 (emphasis added).
[30] First Amended Complaint, ¶ 12.

And there can be no question that this barrier "relates to" Langer's disability. Langer is a wheelchair user and the requirement for accessible path of travel and sales counter affect wheelchair users.

Thus, there can be no dispute that Langer suffered an injury in fact *during his visit of April 2018*. And defendants have not argued otherwise in its motion. Instead, defendants challenge Langer's standing to bring this ADA lawsuit because they claim he has not suffered an injury-in-fact coupled with an intent to return.

**B.  Langer has standing to obtain injunctive relief because he is deterred from returning to the bar until the unlawful barriers are removed.**

The final question before the court in a standing inquiry is whether a plaintiff can establish that there is ongoing injury or a real likelihood of future injury.[31]  It is axiomatic that if there is no ongoing or likely future injury, then a plaintiff has no standing for injunctive relief. *Chapman* firmly established that there are two ways to demonstrate such standing: "Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief. A disabled individual also suffers a cognizable injury if he is deterred from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there."[32]

In the present case, Langer has alleged such deterrence. Langer's deterrence allegations match the *Chapman* court's holding, almost word for word: "Plaintiff plans to return as a customer of the Bar, to buy a beer and to reassess the Bar for compliance with the access laws. He will face

---

[31] *Chapman*, supra, 631 F.3d at 946-47.
[32] *Chapman*, supra, 631 F.3d at 949.

Opposition to Motion to Dismiss               Case: 3:18-cv-00934-LAB-AGS

discriminatory and unlawful barriers it the unlawful barriers are not removed. He is currently deterred from returning to the bar because of his knowledge of the barriers. In fact, the plaintiff has been in the Bar's neighborhood on numerous occasions over the last year and would have patronized the bar but was deterred from doing so because of his knowledge of both the parking violations and the barriers inside the Bar."[33]

This evidence is uncontroverted and more than sufficient to meet the threshold for standing, especially given that courts have held that standing should be construed generously, liberally and to the broadest extent possible in these ADA cases.

Stating an intention to return to a bar after the barriers have been fixed is sufficient to establish standing: "When asked in his deposition whether he had any plans to return to the store, *Doran* answered, 'Yes, once it's fixed.' This deposition testimony demonstrates both *Doran's* continued deterrence from patronizing the store and his intention to return in the future once the barriers to his full and equal enjoyment of the goods and services offered there have been removed."[34]

The *Doran* court summarized, "Allegations that a plaintiff has visited a public accommodation on a prior occasion and is currently deterred from visiting that accommodation by accessibility barriers establish that a plaintiff's injury is actual or imminent."[35]

Similarly, in the very first case to establish deterrence-standing, the Ninth Circuit held, "We hold that a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's

---

[33] First Amended Complaint, ¶ 28.
[34] *Doran*, supra, 524 F.3d at 1041.
[35] *Doran*, supra, 524 F.3d at 1041.

Opposition to Motion to Dismiss                Case: 3:18-cv-00934-LAB-AGS

failure to comply with the ADA has suffered 'actual injury.' Similarly, a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'"[36]

And just recently, the Ninth Circuit weighed in again on the topic. In *Civ. Rights Educ.*,[37] several disabled plaintiffs sued a hotel chain for inaccessibility under the ADA. They did not have any concrete or specific plans to return and the defendants argued that it was not enough to say that "they do not plan to stay at the hotels unless and until [defendant] remedies the violation."[38] But the Ninth Circuit rejected the defense argument: "The Named Plaintiffs need not intend to visit the hotels until after remediation" because "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury [that] continues so long as equivalent access is denied."[39]

## VI. There is no basis for the court to decline supplemental jurisdiction over the Unruh claim.

Under 28 U.S.C. § 1367 ("section 1367"), where a district court has original jurisdiction over a claim, it also has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."[40] A state claim is part of the same "case or controversy" as a federal claim when the two "derive from a common nucleus of operative fact and are

---

[36] *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002).
[37] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093 (9th Cir. 2017)
[38] *Civ. Rights Educ.*, 867 F.3d at 1100.
[39] *Civ. Rights Educ.*, 867 F.3d at 1100-1101.
[40] 28 U.S.C. § 1367(a).

Opposition to Motion to Dismiss                    Case: 3:18-cv-00934-LAB-AGS

such that a plaintiff would ordinarily be expected to try them in one judicial proceeding."[41] In addition, "economy, convenience, fairness and comity" should be considered in an analysis of supplemental jurisdiction.[42]

The exercise of supplemental jurisdiction is mandatory, unless the exercise of jurisdiction is prohibited by section 1367(b) or falls under one of the exceptions set forth in section 1367(c).[43] Under section 1367(c), a court may decline to exercise supplemental jurisdiction over a related state claim only if: "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."[44]

Here, Badger Co., LLC and David Anthony Gligora seem to be arguing that Unruh substantially predominates over the ADA claim. No other basis is mentioned and even this basis is not fleshed out. But this is nonsense. The ADA and Unruh are inextricably intertwined. A violation of the ADA is a per se violation of Unruh.[45] The incident that forms the basis of both claims is identical. The witnesses are identical. All the documentary evidence (photographs, measurements, bank records, policies, etc.) are identical. All the case law, regulatory material, regulations, and accessibility standards necessary to demonstrate liability

---

[41] *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855-56 (9th Cir. 2004), *quoting United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

[42] *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997).

[43] *Executive Software N. Am., Inc. v. U.S. Dist. Court for the N. Dist. of Cal.*, 24 F.3d 1545, 1555-56 (9th Cir. 1994)

[44] *Id.*, citing 28 U.S.C. § 1367(c).

[45] Cal. Civ. Code § 51(f).

17

1  under both claims in this case are identical.  Langer's counsel is not aware
2  of a federal and state claim more intertwined than the ADA/Unruh pair.

3      More importantly, even if a 1367(c) factor—*substantial*
4  *predominance*—is found, the court is required to take the next step and
5  consider the impact of declining or exercising supplemental jurisdiction:
6  the "justification" underlying the decision whether to maintain
7  supplemental jurisdiction or dismiss claims, "lies in considerations of
8  judicial economy, convenience and fairness to litigants . . . ."[46] In fact, the
9  Courts have recognized that judicial economy is the "*essential policy*
10  behind the modern doctrine of pendent jurisdiction . . . ."[47] As the
11  Supreme Court noted: the "commonsense policy of pendent jurisdiction"
12  is "the conservation of judicial energy and the avoidance of multiplicity
13  of litigation."[48]

14      Here, if this Court were to decline to exercise supplemental
15  jurisdiction over the state claim, it would result in Langer pursuing the
16  Unruh claim in state court while simultaneously prosecuting his ADA
17  claim in federal court. Given that Langer's state claim is predicated upon
18  a finding that the ADA has been violated, this means that almost identical
19  cases would be prosecuted in two different forums.

20      As one Court presiding over an ADA/Unruh case recently noted,
21  "Forcing these parties to litigate two nearly-identical cases in separate
22  venues—one here and one in state court—is neither convenient,
23  economical, nor fair."[49] Likewise, the *Delgado* reasoned:

24      Here, the claims arise from a common nucleus of operative
25      facts. Both the federal and state law claims are based upon
        architectural barriers which infringe upon the accessibility to

26  _____
27  [46] *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).
    [47] *Graf v. Elgin, J. & E. Ry.,* 790 F.2d 1341, 1347–48 (7th Cir.1986)
28  [48] *Rosado v. Wyman*, 397 U.S. 397, 405 (1970)
    [49] *Baker v. Palo Alto University, Inc.*, 2014 WL 631452, *2 (N.D. Cal., 2014)

Opposition to Motion to Dismiss          Case: 3:18-cv-00934-LAB-AGS

the OSH Store. Accordingly, this Court has supplemental jurisdiction over the state law claims. The Court will exercise supplemental jurisdiction over the state law claims. Here, the state issues are not unsettled or novel and complex. Plaintiff's state and federal law claim involve the identical nucleus of operative facts, and require a very similar, if not identical, showing in order to succeed. If this court forced plaintiff to pursue his state law claims in state court, the result would be two highly duplicative trials, constituting an unnecessary expenditure of plaintiff's, defendant's, and the two courts' resources. As a practical matter, plaintiff's state law claims for damages may be the driving force behind this action. To rule as OSH proposes, however, would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act.

[*Delgado v. Orchard Supply Hardware Corp.*, 826 F. Supp. 2d 1208, 1221 (E.D. Cal. 2011).]

The *Kohler* case presents a lengthy analysis of the issue and concluded that fairness favored keeping the Unruh claim in federal court "rather than in a separate, and largely redundant, state-court suit."[50] Another court held that supplemental jurisdiction should be exercised where "declining jurisdiction would simply require twice the expenditure of resources as to the evidentiary determinations."[51] Another framing of the analysis states that supplemental jurisdiction should be exercised to avoid "two parallel proceedings, one in federal court and one in the state system."[52] Here, the federal claim has not been lost and the principles of judicial economy and fairness militates toward keeping Unruh.

Additionally, because Langer would not only be seeking the same determination from both courts, i.e., whether the ADA was violated, but also seeking the same injunction from both Courts,[53] this creates a risk of

---

[50] *Kohler v. Rednap, Inc.*, 794 F. Supp. 2d 1091, 1096 (C.D. Cal. 2011)
[51] *Daenzer v. Wayland Ford, Inc.*, 193 F. Supp. 2d 1030, 1043 (W.D. Mich. 2002)
[52] *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 787 (3d Cir. 1995)
[53] Langer's complaint seeks injunctive relief under both the ADA and the Unruh Civil Rights Act. *See* Complaint, Prayer 1. "Although the Unruh Act makes no express provision for injunctive relief, that remedy as well as damages

19

1  inconsistent orders and duplicative or conflicting remedies. This is yet
2  another reason why it would do violence to the principles of fairness and
3  judicial economy to dismiss the state claims while the federal claim is still
4  viable.

5      One of the most recent rulings on the topic *Schoors v. Seaport*
6  *Village*.[54] There, the court conducted a lengthy analysis and concluded:

> The Court finds that Plaintiff's state-law claim does not substantially dominate his federal ADA claim as they both involve identical alleged facts, witnesses, and evidence. Moreover, as noted by the court in *Johnson v. United Rentals Northwest, Inc.*, No. 2:11-CV-002040JAM-EFB, 2011 WL 2746110, at *4 (E.D. Cal. July 13, 2011), if the Court were to accept Defendant's contention that the statutory damages available to Plaintiff under the Unruh Act are more wide-ranging than the injunctive relief available under the ADA, it "would effectively preclude a district court from ever asserting supplemental jurisdiction over a state law claim under the Unruh Act [in an ADA case]."
>
> Furthermore, the Court notes that it does not disagree with the fact that Plaintiff's statutory damages under the Unruh Act may be greater than the relief provided by his federal claim. However, the Court will not decline to exercise supplemental jurisdiction over Plaintiff's state law claim solely on this basis.

17      *[Schoors*, supra, 2017 WL 1807954 at *4]

## VII.  Badger Co., LLC and David Anthony Gligora's reliance upon *Cuddeback* is a mistake. The *Cuddeback* ruling was on an *unopposed* motion and is both replete with error and distinguishable

21      Urging this court to follow suit, Badger Co., LLC and David
22  Anthony Gligora cites to the *Cuddeback* case where the court declined to
23  exercise supplemental jurisdiction over the Unruh claim. But the
24  *Cuddeback* case is distinguishable and riddled with error. First, the court

---

may be available to an aggrieved person." *Burks v. Poppy Construction Co.*, 57 Cal.2d 463, 470 (1962).

[54] *Schoors v. Seaport Village Operating Co., LLC*, 2017 WL 1807954, (S.D. Cal. May 5, 2017)

Opposition to Motion to Dismiss          Case: 3:18-cv-00934-LAB-AGS

ruled on an *unopposed motion*.[55] The defense moved the court to dismiss Unruh (not exercise supplemental jurisdiction) and the Plaintiff *did not oppose* sending the Unruh claim to state court *in that case*. It was odd, therefore, that the court went on to "rule on the merits" in that matter. Without the benefit of briefing from the opposing counsel, the court risked making a mistake. And the *Cuddeback* court made a whopper of a mistake in its analysis.

The *Cuddeback* court found that there were "two main reasons" for declining supplemental jurisdiction over the Unruh claim.[56] The first reason cited by *Cuddeback* was erroneous. The *Cuddeback* court noted that the plaintiff had identified nine barriers in the complaint and, therefore, concluded: "These nine allegations, if proven, would entitle Plaintiff to a minimum monetary award of $36,000. In contrast, under the ADA, Plaintiff would only be entitled to injunctive relief. Thus, under the circumstances presented, the Court finds that the monetary damages sought by Plaintiff under the Unruh Act substantially predominate over federal injunctive relief." [57]

*Cuddeback* was flat-out wrong in this analysis. An Unruh plaintiff cannot recover multiple penalties merely because there are multiple barriers. The statute is quite clear: "Statutory damages may be assessed pursuant to subdivision (a) based on each particular occasion that the plaintiff was denied full and equal access, and not upon the number of violations of construction-related accessibility standards identified at the place of public accommodation where the denial of full and equal access occurred."[58]

---

[55] *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1027 (S.D. Cal. 2017)
[56] *Cuddeback, supra*, at 1029.
[57] *Cuddeback, supra*, at 1029-30.
[58] Cal. Civ. Code § 55.56(e)

The second reason relied upon by the *Cuddeback* was that the plaintiff had a stand-alone Unruh claim and, therefore, needed to prove *intentional* conduct. "Plaintiff places intentionality at the heart of his claims for relief . . . resolving the issue of intentional discrimination entails application of state-law standards . . . bolster[ing] the conclusion that his Unruh Act claim substantially predominates over his ADA claim."[59]  In the present case, however, Langer does not have a stand-alone Unruh claim. Langer's Unruh claim is predicated upon the ADA: "The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code, § 51(f)."[60] Thus, Langer does not need to prove intent and intent is not "at the heart" of his case: "A plaintiff who establishes a violation of the ADA, therefore, need not prove intentional discrimination in order to obtain damages under section 52."[61]

## VIII.  Conclusion

Langer respectfully requests this Court deny the Defendants' motion and permit this case to proceed past the pleadings stage. The First Amended Complaint gives the Defendants fair notice of Langer's claims and has adequate factual and legal allegations.

Dated: July 1, 2019                    CENTER FOR DISABILITY ACCESS


                                       By:   /s/ Elliott Montgomery
                                       ELLIOTT MONTGOMERY
                                       Attorneys for Plaintiff

---

[59] *Cuddeback*, *supra*, at 1030.
[60] First Amended Complaint, ¶ 50.
[61] *In Munson v. Del Taco, Inc.*, 46 Cal. 4th 661, 665 (2009)

Opposition to Motion to Dismiss          Case: 3:18-cv-00934-LAB-AGS