UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER,<br><br>        Plaintiff,<br><br>v.<br><br>BADGER CO., LLC, et al.,<br><br>        Defendants. | Case No.:  18CV934-LAB (AGS)<br><br>**ORDER IMPOSING SANCTIONS** |

  On February 14, the Court granted in part Defendants' motion to dismiss. The Court dismissed the first amended complaint without prejudice, and instructed Plaintiff Chris Langer that if he thought he could amend successfully, he should seek leave to do so by filing an *ex parte* motion. That order required Langer, before continuing to litigate, to confirm that he was willing and able to return to Dave's Tavern, and that injunctive relief under the Americans with Disabilities Act was still necessary to allow him to do so. (Docket no. 18 at 4:21–5:5.) Langer then brought an interlocutory appeal of that non-final order. (*See* Docket no. 19.)

  On February 28, the Court in a reasoned order that cited longstanding binding precedent held that Langer's improper interlocutory appeal did not deprive it of jurisdiction. Because it appeared Dave's Tavern, which is the focus of this lawsuit, might have permanently moved or closed, Langer was again ordered to

confirm that the tavern was still in operation at the same address, such that he could patronize it in the future if conditions in the parking lot were remedied. He was ordered to do that within seven days (*i.e.*, by March 6). He was also ordered, within ten days of the date the order was docketed (*i.e.*, by March 9), to file a declaration stating that he did that, and that if conditions in the parking lot are remedied, he could and would again visit Dave's Tavern. If he discovered that he could not or would not visit Dave's Tavern again or that injunctive relief was unnecessary or unavailable, he was not permitted to leave the Court hanging, but was ordered to file a notice so stating. (Docket no. 22 at 3:27–28.) The order, citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977), held that because mootness of a claim is jurisdictional, the Court was required to inquire *sua sponte* if necessary, whenever a doubt arises as to its jurisdiction. The order also pointed out that if it turned out Langer did not want to or could not patronize Dave's Tavern in the future, continuing to prosecute his claims for injunctive relief would be frivolous and would amount to a serious breach. *See Ass'n of Women with Disabilities Advocating Access* ex rel. *Jackson v. Mouet*, 2007 WL 173959, at *4–7 (S.D. Cal., Jan. 11, 2007) (sanctioning counsel for continuing to seek injunctive relief under the ADA against convenience store that had been closed for two years).

Langer without explanation then filed a notice voluntarily dismissing his interlocutory appeal. On March 11, the Ninth Circuit dismissed the appeal, and its mandate issued.

Counsel for Langer filed nothing in response to this Court's February 28 order, nor did they offer any excuse or reason for not doing so. On March 16, the Court ordered his two attorneys of record, Russell Handy and Chris Carson,[1] to

---

[1] Handy and Carson are designated as lead counsel in the docket. Carson signed the original and amended complaints. She is listed first in the heading there, as

show cause why they should not be sanctioned for disobeying the Court's order. They have filed a response (Docket no. 26, "Response"), and their behavior is worse than the Court supposed it might be.

The Response, without explanation and without citing any authority, rejects the Court's holdings, characterizing them as mere arguments. The Response also distorts the record and its timeline, apparently in an attempt to create the appearance that counsel's disobedience was the result of a good faith error. The Response suggests that counsel were first aware on March 16 of their obligation to comply with the February 28 order. (*See* Response at 3:6–7 (characterizing the March 16 Order to Show cause as "discussing the notice of appeal, and making an argument that the appeal was premature")). In fact the February 28 order itself explained at length why the notice of appeal did not deprive it of jurisdiction, and why Langer was required to continue obeying the Court's orders.  (*See* Docket no. 22 at 1:27–3:2.) That Order's holding was a decision of the Court, not a suggestion or an invitation to debate. The March 16 Order to Show Cause referred to the February 28 order, but added nothing new to it.

Furthermore, it is clear that counsel saw and read the February 28 order because the Response says it was this order that prompted them to dismiss the appeal, as a "courtesy" to the Court. (Response at 1:25–27, 3:6–13.) This voluntary dismissal obviously could not have been prompted by anything in the March 16 order, which was issued much later. It is clear, in other words, that counsel knew about the Court's February 28 order and willfully disobeyed it. The Court's holdings are not  mere arguments  that counsel are free  to reject at their pleasure.  This  is
/ / /

---

well as in the Opposition to the Motion to Dismiss. Handy took the lead in later proceedings. A third attorney also appeared and signed pleadings, but appears to have played a lesser role.

true regardless of whether the Court explains its decisions. But it is particularly true here, where the Court cited and relied on longstanding binding authority.

If counsel had believed the Court made an error, they could have sought reconsideration or seek relief from the Ninth Circuit. *See Ruby v. Secretary of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) ("In the rare instance where the district court proceeds with a case under the mistaken belief that a notice of appeal is inoperative, the appellant may apply to the court of appeals for a writ of prohibition.")[2] They cannot, however, sit in judgment on the Court's order themselves, nor can they flout it with impunity.

Counsel have also raised California's "shelter in place" order as an explanation for their disobedience, and argue that their office is "completely shut down" and everyone is "scrambling" to postpone hearings. (Response at 3:15–26.) This is implausible, both because California issued no such order until well after the deadline had passed, and also because they and their firm were still actively litigating and filing documents at that time.  In fact, they continue at present to litigate cases in this District. A search of this Court's dockets shows that from March 16 until today, Handy has filed over twenty new complaints, and the firm is actively litigating or settling many of these cases. The suggestion that COVID-19 is somehow to blame is clearly untrue.

Langer has also filed a late motion for leave to amend, which Defendants oppose. The briefing on this motion sheds further light on Plaintiff's counsel's disobedience. The motion concedes that Dave's Tavern is closed, but seeks leave to file an amended complaint suing the owners of the new bar, the Vinyl Draft Classic Rock Sports Bar, which has taken its place.  Langer has never been to this bar, which is now closed because of government restrictions and which may not

---

[2] Counsel were aware of *Ruby*, because the Court's February 28 order cited it, and analyzed this part of *Ruby*'s holding.

reopen. Though the proposed amended complaint fails to invoke the Court's jurisdiction, the Court will rule on the motion for leave to amend in a separate order.

More seriously, Defendants' opposition shows that they told Langer's counsel over a year ago that Dave's Tavern had closed (*see* Docket no. 27-4 (email of June 5, 2019 to Phyl Grace)), and Langer continued litigating this case. Bearing in mind that Langer lives near the Tavern (*see* Docket no. 25-2, ¶ 2 (Langer's declaration that he lives less than three miles from the Tavern)), he and his counsel either knowingly avoided investigating, or else they knew that the Tavern was closed and continued to press the injunctive relief claim anyway, asking (among other things) that the Court order Dave Gligora, the Tavern's owner, to remove barriers inside the Tavern. (*See, e.g.,* Docket no. 11 (First Amended Complaint), ¶¶ 21–27, 28–30, 37–48.). Obviously, Gligora could not remediate any ADA violations in an establishment he neither owned nor operated. Nor was Langer suffering an ongoing injury by being denied access to the now-shuttered Tavern. As the Court's February 28 order pointed out, this is a serious ethical breach. It is also a direct violation of the Court's order forbidding them from proceeding further until they confirmed that Dave's Tavern was still open.

Furthermore, the pleadings specifically allege that Langer intended to return to Dave's Tavern and patronize it just as soon as barriers are removed. Counsel knew or were willfully blind to the fact that this was false, yet they kept prosecuting the ADA claim anyway. In fact, they continued to tell the Court Langer was going to return to the tavern long after they knew he would not or could not. (*See* Docket no. 14 (Opp'n to Mot. to Dismiss for Lack of Jurisdiction) at 14:10–16:16 (arguing that Langer had standing to seek injunctive relief, because Langer intended to return to Dave's Tavern but that barriers there prevented him from doing so).) They also used this falsehood as a basis for arguing that the Court could not decline supplemental jurisdiction over Langer's state law claim. (*See id.* at 16:17–20:17.) At the very least, this amounts to a fraud on the Court.

Because this fraud may have been committed by the firm generally,[3] rather than by Handy or Carson in particular, it is beyond the scope of the Court's Order to Show Cause, and the Court is not sanctioning counsel for their firm's misconduct. That being said, because they served as counsel of record throughout the case, they are responsible for knowing what was filed.

The only partially mitigating fact the Response mentions is that Carson relied on the judgment of her supervisor, Handy. Both Carson and Handy are counsel of record, and are each responsible for doing what the Court orders them to do. The Response does not suggest otherwise. As a subordinate, Carson bears less responsibility than does Handy, though her status does not absolve her. By way of analogy,[4] rule 5.2(a) of the California Rules of Professional Conduct requires subordinate lawyers to comply with professional responsibilities regardless of whether she acts at the direction of another lawyer. Under Rule 5.2(b), subordinates are shielded from responsibility for their acts taken in reliance of a supervisory lawyer's reasonable resolution of an arguable question of professional duty. Whether to obey or disobey the Court's order was not an arguable question, and Handy's determination that the interlocutory notice of appeal deprived the Court of jurisdiction was not reasonable. Even if it had been reasonable, it would at most have suggested to Carson she was not obligated to comply with the Court's order, not that she should not. Counsel's continued and unsupported assertions to the contrary only compound their fault. Nevertheless, the Court recognizes that

---

[3] The Opposition to the Motion to Dismiss was signed by a subordinate, not by either Handy or Carson, although Handy's name appears in the heading. It is not clear whether the subordinate had reason to believe he was signing a misleading document, though it is clear that knowledge should be imputed to the firm.

[4] The Court may rely on the California Rules of Professional Conduct as an informative guide. *See Cochrane Firm, P.C. v. Cochran Firm Los Angles LLP*, 641 Fed. Appx. 749, 751 (9th Cir. 2016).

Carson played a less active role in the later stages of this case than did Handy, and the sanctions should reflect that.

The Court find that attorneys Russell Handy and Chris Carson intentionally and willfully disobeyed its February 28 order. They did this in order to keep a claim alive that they had reason to know had become moot, and to conceal the truth from the Court and to thwart the Court's own efforts to carry out its jurisdictional obligations. The Response only compounds their misconduct, by refusing to take responsibility for their disobedience, and attempting to shift blame onto the COVID-19 pandemic and even the Court itself.  It is also clear they either had actual or constructive knowledge that Dave's Tavern was closed, or were on inquiry notice well before the Court's February 28 order, and litigated in bad faith even after being warned. They are therefore subject to sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991); Civil Local Rule 83.1. As a sanction for their disobedience, Handy is **ORDERED** to pay $950 and Carson is **ORDERED** to pay $250. The Court believes these sanctions are sufficient to deter future misconduct, but not more severe than necessary.  They must make payment by **May 28, 2020**.

This order is intended to vindicate the Court's own orders by sanctioning counsel's willful and intentional disobedience to those orders. The Court is not sanctioning them for other violations at this time. But it is apparent Langer's counsel acted willfully and in bad faith in continuing to litigate an ADA claim they knew or had reason to believe was moot, thereby imposing costs on Defendants. In particular, counsel's misconduct unjustly imposed expenses on Dave Gligora, who no longer operated the Tavern and who obviously had no power to comply with any injunction. More generally, once the ADA claim became moot, there was no longer any basis for supplemental jurisdiction. *See Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001).

If Defendants wish, they may file an *ex parte* motion for costs and attorney's fees to compensate them for costs of defending this action, beginning when Langer

or his counsel had reason to know that Dave's Tavern had permanently closed or moved. Such a motion must be filed by **June 2, 2020**. Any motion should be supported by a detailed record of costs and fees over time. If possible, it should be capable of being divided between the two Defendants. Any opposition is due by **June 9, 2020**. No reply should be filed without leave. If appropriate, the Court will hold an evidentiary hearing, but otherwise the matter will be deemed submitted once the briefing is filed.

If the parties would like assistance settling the issue of costs and fees, they should contact the chambers of Magistrate Judge Andrew Schopler. The Court will address the motion for leave to amend in a separate order.

**IT IS SO ORDERED**.

Dated: May 15, 2020

*Larry A. Burns*
Hon. Larry Alan Burns
Chief United States District Judge