UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS LANGER,<br><br>                   Plaintiff,<br><br>v.<br><br>BADGER CO., LLC, et al.,<br><br>              Defendants. | Case No.:  18cv934-LAB (AGS)<br><br>**ORDER DENYING LEAVE TO FILE AMENDED COMPLAINT; AND**<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEY'S FEES; AND**<br><br>**ORDER OF DISMISSAL** |

Plaintiff Chris Langer filed this action on May 12, 2018, alleging that he went to Dave's Tavern in San Diego in April, 2018 and encountered violations of the Americans with Disabilities Act (ADA) there. He alleged that he intended to patronize the Tavern in the future, if the barriers were removed. The complaint's allegations were not completely clear, but the barriers concerned conditions in the parking lot as well as conditions inside the Tavern. Plaintiff sued Dave Gligora, the Tavern's owner, as well as Badger Co., the owner of the property, which included the parking lot. The parties are not diverse. Plaintiff relied on federal question jurisdiction over his ADA claims, and supplemental jurisdiction over his related state law claims.

The Court dismissed the complaint without prejudice and gave Plaintiff leave to amend, which he did. After dismissing Plaintiff's amended complaint without prejudice, the Court set forth procedures for him to follow if he sought leave to amend again, Part of those procedures included a requirement that Plaintiff confirm in a declaration that he still wanted and needed injunctive relief. At a minimum, the Court said, either Plaintiff or someone on his behalf was required to ascertain that Dave's Tavern was still in operation and was still being operated by Gligora. (Docket no. 18 at 5:8–11.)

Plaintiff brought an unauthorized interlocutory appeal. (Docket no. 19 (Notice of Appeal).) The Court, in a reasoned order, explained why the notice of appeal from a non-final order did not deprive it of jurisdiction. It again ordered Plaintiff or someone on his behalf to confirm that Dave's Tavern was still open and being operated by Gligora, and then to file a declaration showing that this was done. (Docket no. 22 at 3:21–27.) If he discovered that he could not or would not visit Dave's Tavern again or that injunctive relief was unnecessary or unavailable, he was required to file a notice so stating. (*Id.* at 3:27–27.) He was ordered to comply with this requirement within ten days. The Court emphatically warned him that if it turned out Plaintiff no longer wanted to patronize Dave's Tavern, or could not, then continuing to prosecute claims for injunctive relief would be frivolous and sanctionable. (*Id.* at 3:14–20.) The order cited *Ass'n of Women with Disabilities Advocating Access* ex rel. *Jackson v. Mouet*, 2007 WL 173959, at *4–7 (S.D. Cal., Jan 11, 2007), a case where an attorney was sanctioned for continuing to seek injunctive relief under the ADA against a convenience store that had been closed for two years. The Court also, *sua sponte*, extended the time for Plaintiff to seek leave to amend, so that he would have an opportunity to confirm his continuing need for injunctive relief before being required to file his motion for leave to amend. (*Id.* at 4:1–3.) Plaintiff sought leave to dismiss his interlocutory appeal voluntarily, and the Ninth Circuit granted his request, dismissing the appeal.

When Plaintiff did not obey either the first or the second order requiring him to confirm his continuing need for injunctive relief, the Court ordered his counsel to show cause why they should not be sanctioned. (Docket no. 24.) As part of that order, the Court ordered Plaintiff for a third time to provide a declaration showing his continuing need for injunctive relief, including confirming that Dave's Tavern was still open and being operated by Gligora.

Plaintiff's counsel filed a late motion for leave to amend, abandoning claims concerning Dave's Tavern (but not claims against Gligora) and adding a new Defendant — PB Tavern, Inc., operator of a new sports bar at the same location. The motion represented that "the only change during the course of this case is that the sports bar is now called Vinyl Draft Classic Rock Sports Bar ("Vinyl Draft") and is operated by PB Tavern, Inc." (Docket no. 25 at 3:10–12.) It emphasized that "nothing has changed" with respect to Defendant Badger Co., and that Gligora was still a proper Defendant. (Docket no. 25 at 3:13–18.)

The motion was supported by an affidavit saying that counsel had searched business records to determine who owned the new business and its liquor license, and had "consulted with Mr. Langer," and that he and Langer "believe there is good cause to maintain this lawsuit." (Docket no. 25-1, ¶¶ 2, 4.) It said counsel had sent an investigator to the bar on March 2, 2020, and that the investigator took photographs and measurements at the bar. (*Id.*, ¶ 3–4.) It was also supported by Plaintiff's own declaration saying he lived near the bar's location, and that he intended to patronize Vinyl Draft once the barriers there were removed.

Defendants then filed an opposition to the motion for leave to amend. Among other things, the opposition provided documentary evidence that Defendants told Plaintiff's counsel a year earlier that Dave's Tavern had closed permanently some time in mid-2018.

Although Plaintiff's counsel avoided saying so directly, Dave's Tavern closed shortly after he filed this action, and a completely different business took over the

18cv934-LAB (AGS)

facility. The only similarity was that both were bars. Another concern that the Court's orders touched on is that government restrictions related to the COVID-19 pandemic have forced bars to cease indoor service or close, and many have gone out of business altogether. Because ordering a closed business to remove barriers would afford an ADA plaintiff no meaningful relief, permanent or indefinite closure of the public accommodation that is the target of ADA litigation generally moots the claim. *See Rivera v. Crema Coffee Company*, 438 F. Supp. 3d 1068, 1073–74 (N.D. Cal., 2020) (where injunction would have required removal of barriers at a café, the permanent closure of the café mooted the claim).   *See also Ramirez v. Golden Crème Donuts*, 670 Fed. Appx. 620, 620–21 (9th Cir. 2016) (after restroom that was the subject of ADA litigation was closed to the public, the claim became moot). And once the ADA claim has become moot, the Court can properly decline to exercise supplemental jurisdiction over state law claims. *See Wander v. Kaus*, 304 F.3d 856, 857–59 (9th Cir. 2002).

In a detailed and reasoned order (Docket no. 28), the Court imposed monetary sanctions against Plaintiff's counsel, finding among other things that they had willfully disobeyed its earlier order and had concealed the fact that Dave's Tavern was closed, in order to keep alive a claim they had reason to know had become moot.

**Motion for Leave to Amend**

In his untimely motion, Plaintiff persists in arguing that he has a viable claim for injunctive relief to remedy ADA violations at Dave's Tavern, even though Dave's Tavern closed long ago and is not coming back. Plaintiff cannot patronize it, and a grant of injunctive relief — the only form of relief available to him for an ADA violation — would be fruitless. *See Rivera*, 438 F. Supp. 3d at 1073–74. With regard to Dave's Tavern, Plaintiff's sole federal claim is moot. The Court will not exercise supplemental jurisdiction over the related state law claim. *See Wander*, 304 F.3d at 857–59. All of Plaintiff's initial claims must therefore be dismissed.

Plaintiff's proposed new claims pertain to Vinyl Draft. Even though he lives nearby, frequents bars and pubs, and wants to patronize Vinyl Draft, he has never been there. From the time Vinyl Draft opened, apparently in mid-2018, until some time after March 2, 2020 when he was told about the conditions at Vinyl Draft, he did not know what, if any, barriers were still present there.[1] Currently, Vinyl Draft — like all bars in San Diego County — has been ordered to close its doors.[2] Plaintiff may, as he alleges, have reason to believe he would encounter barriers inside if Vinyl Draft were open and if he went inside. But he cannot reasonably claim those barriers are deterring him from visiting an establishment that is indefinitely closed for other reasons. Nor can he reasonably argue that barriers he had no reason to suppose were present deterred him in the past from patronizing Vinyl Draft.

It may be that Vinyl Draft will reopen, and if so, that Plaintiff will be willing and able to patronize it. But until then, his claim for injunctive relief is unripe. Even assuming Plaintiff could allege a supplemental state claim against Vinyl Draft, it would likely have accrued at the earliest in March of this year.

---

[1] According to Plaintiff's briefing, he learned about conditions at Vinyl Draft some time after his counsel sent an investigator there to document conditions. (Docket no. 25-3 (Redlined Proposed Second Am. Compl.) at 7:3–6.) These included conditions such as furniture dimensions and placement that would be likely to change when a new business took over the facility. (*Id.* at 5:21–6:1, 7:9–19.) Contrary to Plaintiff's arguments, the building appears to have been remodeled to some extent, because crucial dimensions such as the width of the restroom door and of the passageway leading to the restroom are different. (*Id.* at 6:2–5, 7:15–16.) Conditions in the parking lot also improved. (*Id.* at 3:8–12, 7:7–8.)

[2] Bars that serve food have been permitted to maintain drive-up, take-out, and delivery service. Plaintiff does not allege that Vinyl Draft ordinarily serves food, or if it does, whether it is selling food now. But even if it is, Plaintiff would not need the relief he seeks in order to purchase food using one of the lawful methods. And in any case, Plaintiff has alleged that his interest is in drinking beer, not buying food or dining. (*See, e.g.*, Dkt. no. 25-4 (Proposed 2d Am. Compl.), ¶¶ 12, 28.)

18cv934-LAB (AGS)

1  / / /

2  Moreover, many of the allegations are conclusory and vague in ways that
3  have already been pointed out to Plaintiff. Many of the new allegations concerning
4  slopes in the parking lot, for example, are deficient in failing to allege where they
5  are and how they affect him. Although the designated disabled parking space in
6  the past allegedly had slopes measuring from 5.9% to 15.3% (see Docket no. 25-
7  4, ¶ 16), the space now has slopes "as much as 4.6%" at unspecified locations
8  within it. (*Id.*, ¶ 25.) While the allegations are consistent with an ADA violation, they
9  do not plausibly make out a violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678
10  (2009). In order to be actionable, violations must have some actual effect on
11  Plaintiff, so as to deny him full and equal access. Merely pointing out technical
12  violations does not plead a claim. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d
13  939, 955 (9th Cir. 2011) (en banc). The allegations do not show that the slopes
14  were positioned in a place that would have some effect on Plaintiff when he parked
15  there. *See, e.g., Strong v. Johnson*, 2017 WL 3537746, at *2 (S.D. Cal., Aug. 17,
16  2017) (holding that excessive slopes in areas of a parking space that no one would
17  likely encounter when using the parking space could not serve as the basis for an
18  ADA claim).[3] This is not to say that Plaintiff could not amend successfully, only that
19  the proposed amendments are defective.

20

21

22  [3] For the first time, in his opposition to the fee motion, Plaintiff gives an indication
23  of where the slopes were, by including photographs as exhibits. The photographs
    show a small electronic level used by an investigator, placed at various points in
24  the parking lot. It is not clear whether these would affect Plaintiff, and it is clear
    some of the pictured slopes, because of their placement, would not. It is also not
25  clear that the "slopes" in the photographs are actually slopes, as opposed to small
    local irregularities caused by the pavement's surface texture, or even by debris.
26  Using a pocket-sized level such as this is not the recommended or standard
27  method of measuring slope. *See* <www.ada.gov/pcatoolkit/introapp1and2.htm>
    (identifying a 2-foot long electronic level as standard equipment for measuring
28  slope, and describing how to take measurements).

/ / /

Significantly, Plaintiff's previous claims (arising from denial of access to Dave's Tavern) and present claims (arising from denial of access to Vinyl Draft) are independent. They concern access to businesses at the same address, and Badger Co. remains the owner of the (now changed) parking lot. But these are separate claims, arising from different transactions and occurrences. There is no reason Plaintiff needs to bring them as part of the same action. Nothing prevents him from bringing his claims — if they ever ripen — in a separate suit. The only apparent reason to permit Plaintiff to amend instead of merely filing a new action would be to keep his earlier supplemental state law claims in play. But, for reasons discussed at length *infra*, the Court will not exercise supplemental jurisdiction over Plaintiff's state law claims in connection with his moot ADA claim. For the Court to have supplemental jurisdiction on the basis of another claim, the state law claim must arise from the same transaction or occurrence as the federal claim. *See Housing Auth. of City of L.A. v. PCC Technical Indus., Inc.*, 2014 WL 12923488, slip op. at *3 (C.D. Cal., Aug. 18, 2014). And even if the Court could exercise supplemental jurisdiction over Plaintiff's old state law claims in an amended complaint, it would in its discretion decline to do so. *See Moor v. County of Alameda*, 411 U.S. 693, 716–17 (1973) (recognizing district courts' "broad discretion" when determining whether to exercise supplemental jurisdiction). In short, permitting Plaintiff to amend would not salvage his existing claims; it would instead amount to the initiation of a new lawsuit in the same docket.

Under Fed. R. Civ. P. 15(a)(2), the Court should freely give leave to amend when justice so requires. Here, justice does not require leave to amend. Plaintiff's past claims are already defunct, and denial of leave to amend will have no effect on the viability of his proposed new claims. The admonition to refrain from putting new wine in old wineskins seems particularly apt here. Pouring a new case into the remains of an old one would help nothing. Rather, it would merely delay the

conclusion of this case and deprive Defendants of finality.

**Motion for Award of Attorney's Fees**

Defendants' motion seeks an award of attorney's fees for having to defend against Plaintiff's frivolous or abusive claims, which his counsel knew or had reason to know were improper.[4] The motion is supported by exhibits, the authenticity of which Plaintiff does not dispute. The parties' briefing focuses on whether the case or individual claims were frivolous or abusive, without clearly identifying which statute, rule, or legal principle they are referring to.

The Court has authority under 28 U.S.C. § 1927 to award costs and fees when attorneys multiply the proceedings unreasonably and vexatiously after the filing of the complaint. *See In re Keegan Mgt. Co., Securities Litigation*, 78 F.3d 431, 435 (9th Cir. 1996). The standard under this statute is the same for plaintiffs and defendants. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762–63 (1980). The Court has discretion to award fees both for raising frivolous arguments, and also for pursuing meritorious claims for illegitimate purpose, such as harassment. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107 (9th Cir. 2002). Any such award must be limited to the costs and fees necessitated by the frivolous claim or vexatious and unreasonable behavior. *See* § 1927. *Compare Fox v. Vice*, 563 U.S. 826, 836 (2011) (fee award under 42 U.S.C. § 1988); *Martinez v. Walt Disney Parks & Resorts U.S., Inc.*, 629 Fed. Appx. 811, 813 (9th Cir. 2015) (applying *Fox* / / /

_____

[4] Defendants seek an award against Plaintiff and his counsel, jointly and severally. While individual litigants can be sanctioned for their own acts in bad faith, *see Lucas v. Jos. A. Bank Clothiers, Inc.*, 217 F. Supp. 3d 1200 (S.D.Cal., 2016), § 1927 only provides for sanctions against attorneys or others admitted to handle cases. In any event, there is no evidence Plaintiff himself was responsible for vexatious and improper conduct, or that he can be held responsible for his counsel's choices.

/ / /

to fee motion under Fed. R. Civ. P. 54, in ADA case). The Court can also rely on its inherent authority. *See B.K.B.*, 276 F.3d at 1107–08.

A fee award under § 1927 is permitted where offending behavior is intended to harass, or where counsel either knowingly or recklessly makes frivolous arguments. *B.K.B.*, 276 F.3d at 1107. Subjective bad faith warrants sanctions under this section, as does recklessly or intentionally misleading the court. *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010). An award under the Court's inherent power requires a finding of bad faith. *B.K.B.*, 276 F.3d at 1107 (citing *Fink v. Gomez*, 239 F.3d 989, 993 (9th Cir. 2001).

Two other common sources of authority for a fee award — Fed. R. Civ. P. 11 and the ADA's fee-shifting provision, 42 U.S.C. § 12205 — do not apply here. Defendants do not rely on Rule 11. The motion mentions Fed. R. Civ. P. 11 only in the context of identifying Plaintiff's counsel's obligations, and does not argue that Defendants complied with the requirements of Rule 11(c)(2). Under § 12205, the Court can award fees to a "prevailing party." *Kohler v. Bed Bath & Beyond of Calif., LLC*, 780 F.3d 1260, 1266 (9th Cir. 2015). But this requires that there be a "judicially sanctioned change in the legal relationship of the parties." *Id.* (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources*, 532 U.S. 598, 605 (2001)). Where a claim is resolved through the mooting of any possible relief, a fee award is not authorized. *Id.*

The Court is mindful that sanctions are not to be imposed lightly or routinely, but are reserved for exceptional cases where claims are clearly frivolous or brought for improper purposes. *See Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997). Claims and arguments are not legally frivolous merely because they do not prevail. *See Harris v. Maricopa Cnty. Sup. Ct.*, 631 F.3d 963, 979 (9th Cir. 2011) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422 (1978)). Plaintiff's litigation of his claims was partially but not completely

frivolous, growing more frivolous and abusive as the case progressed.

State law claims arising from the presence of barriers in the parking lot were not frivolous, and the initial request for injunctive relief was not frivolous. Defendants have offered evidence that they conducted their own survey of the interior and found no violations, but that was apparently conducted well after Plaintiff says he visited Dave's Tavern. The Court is not in a position to make a determination of conditions inside the tavern or in the parking lot two years ago.

State law damages claims for conditions inside Dave's Tavern were based on barriers Plaintiff admittedly never encountered, and only learned about from an investigator after conditions in the parking lot had already deterred him from returning.  (Am. Compl., ¶¶ 15–20.) Claims a plaintiff did not encounter and which did not deter him on a particular occasion from patronizing a business are not actionable. *See* Cal. Civ. Code § 55.56(b); *Ambrosio v. Italgres Italian Ceramic Tile, Inc.*, 2015 WL 3879874, at *6 (Cal. App. 4 Dist. June 24, 2015). But Plaintiff alleges that his knowledge of these barriers deterred him from returning to the tavern on a number of later occasions. (Am. Compl., ¶ 53.) While these allegations are conclusory and — bearing in mind the tavern closed shortly after Plaintiff filed suit — possibly inaccurate, it is not clear they were frivolous.

For purposes of this order, the Court accepts that Plaintiff and his counsel may have had a reasonable basis for all their claims at the time the case was filed, and that at least initially the claims were not frivolous.

The fact that Dave's Tavern no longer existed at that address and that Gligora had no connection with the Vinyl Draft was not raised in the docket until the Court began issuing its orders to show cause.  However, exhibits attached to the fee motion show that Plaintiff's counsel was first urged to visit the site to confirm that the alleged barriers were absent, and shortly after that was told that the tavern no longer existed.  In an email sent May 28, 2019, Defendants' counsel urged Plaintiff's counsel to visit the site, and sent photos of the interior attempting to show

1  that the alleged barriers were not there. That email, however, did not mention that

2  Dave's Tavern was closed or that a new establishment had moved in. However,

3  on June 5, 2019, Defendants' counsel sent Plaintiff's counsel an email saying that

4  Dave's Tavern had shut down shortly after the lawsuit was filed, and that Gligora

5  had no connection with the building any more. It is undisputed that this was true.

6      On receiving the June 5, 2019 email, Plaintiff's counsel had reason to believe

7  that Dave's Tavern had closed. Under Fed. R. Civ. P. 11, they were required to

8  take reasonable measures to confirm that there was still a factual basis for seeking

9  injunctive relief, and also for seeking to enjoin Gligora. They never did anything,

10  however, until ordered several times by the Court to do so. Taking no action at all

11  in response to credible representations of the kind Defendants' counsel made in

12  the June 5, 2019 email is unreasonable. Although the amended complaint included

13  multiple factual allegations Plaintiff's counsel reasonably should have known to be

14  false (*e.g.*, that Dave's Tavern was still in operation at the same address, and that

15  Gligora was the current owner), they continued to advocate for those claims. For

16  example, on July 1, 2019, nearly a month after being notified that Dave's Tavern

17  no longer existed, they filed an opposition (Docket no. 14) to Defendants' motion

18  to dismiss the amended complaint for lack of jurisdiction. The opposition reaffirmed

19  the amended complaint's allegations and reasserted that Plaintiff had standing —

20  an assertion counsel had good reason to know was wrong. (*Id.* at 1:6–11.) It relied

21  in detail on the amended complaint's allegations, repeating them verbatim. (*See,*

22  *e.g., id.* at 4:13–16 (alleging that Gligora "currently owns and operates" Dave's

23  Tavern at the original address).) Although repeating and relying on previous filings

24  is one way to trigger Fed. R. Civ. P. 11(b)'s ethical obligations, Plaintiff's counsel

25  also made new assertions. For example, they chided Defendants for quibbling

26  about who had control over the property, insisting that Badger was responsible for

27  making sure the tavern complied with the ADA, and that Gligora still owned the

28  tavern. (*Id.* at 9:13–10:2 (asserting that Gligora was liable because he "is the *owner*

of the place of public accommodation"), 11:1–4 (arguing that Badger was obligated to see that Dave's Tavern was in compliance with the ADA).) The opposition was replete with representations that Plaintiff was ready and willing to return to Dave's Tavern and to patronize it, and it reasserted that he had standing to seek injunctive relief. (*Id.* at 14:12–15:7.)

Plaintiff's counsel have argued that they could still reasonably pursue damages claims, because the Court previously had subject matter jurisdiction over them. In support of this, they cite *Schneider v. TRW, Inc.*, 938 F.2d 986, 993 (9th Cir. 1991) for the principle that a federal court is not required to dismiss supplemental claims after the sole federal claim is moot. It is not clear that *Schneider* is applicable here, or whether *Herman Family Revocable Tr. v. Teddy Bear*, 254 F.3d 802 (9th Cir. 2001) controls. The distinction would rest on a factual determination regarding Plaintiff's intent to return to Dave's Tavern, and whether on the day he filed suit he intended to return to Dave's. Once he did not intend to, or could not return, his ADA claim became moot. If that happened before he filed suit, the Court never had jurisdiction over any federal claim and *Herman* controls; if it happened after he filed suit, *Schneider* likely controls.

Plaintiff alleged that he visited Dave's Tavern about a month before filing this action. Dave's Tavern closed shortly after Plaintiff filed suit, so it is conceivable that he intended to and could return at that time. On the other hand, Plaintiff's allegations as well as his behavior suggest this was at best a vague "someday" intent. *See Johnson v. Mantena LLC*, 2020 WL 1531355, slip op. at *4 (N.D.Cal., Mar. 31, 2020). If he did have a definite intent to return, he apparently had abandoned that intent in the month before he filed suit; the next two years he never went to Dave's Tavern, and apparently never even drove past it or looked at the

place where it used to be even though he lived close by.[5] Additionally, the Court has noted already that Plaintiff maintains an extraordinarily active itinerary, having filed over 1300 ADA cases in this District and the Central District in recent years. (*See* Docket no. 22 at 3:3–6). His habit of visiting numerous businesses all over Southern California reduces still further the likelihood he would return to Dave's Tavern, or that he had any concrete plans to do so. If the Court were called on to make factual findings, it would determine that as of the time he filed suit, he had no definite intent to return to Dave's Tavern and was unlikely ever to return, and that counsel knew or should have known this.

But the Court need not resolve this, for two reasons. First, Plaintiff's counsel resisted dismissal by vehemently misrepresenting to the Court that it lacked discretion to decline supplemental jurisdiction. (Docket no. 14 at 16:17–18:13.)[6] (*See especially id.* at 14:16–17 ("**There is no basis for the court to decline supplemental jurisdiction over the Unruh claim.**") (heading of argument section; boldface in original).) Second, Plaintiff's counsel's actions were unreasonable even if *Schneider* and related cases control. Those cases hold that a court has *discretion* to continue exercising supplemental jurisdiction. Discretion

---

[5] Plaintiff's counsel emphasized that Plaintiff frequented the neighborhood where Dave's Tavern was located. (*See* Am. Compl. (Docket no. 11), ¶ 28; Opp'n to Mot. to Dismiss ( Docket no. 14) at 15:3–7.)

[6] The opposition was signed by a junior attorney at Plaintiff's counsel's firm. But senior attorneys were clearly aware of what it said and approved its filing. They and the firm are also named in the caption, and they received electronic notice of its filing. More importantly, they were directing the litigation. All lawyers in the firm who were involved in a supervisory or other leading role in this litigation are presumed to know what the others are doing in the case. *See State Compensation Ins. Fund v. Drobot*, 2014 WL 12579808, at *7 (C.D.Cal., July 11, 2014) (recognizing, as a pragmatic matter, that what some attorneys know will be communicated to other attorneys in the same firm); *Genentech, Inc. v. Sanofi-Aventis Deutschland GMBH*, 2010 WL 1136478, at *7 (N.D.Cal., Mar. 20, 2010) (recognizing the reality that attorneys working in the same firm share information).

1    refers to the court's — not a party's — authority to make the decision, and implies
2    that the court will have the facts it needs to make that decision. All attorneys owe
3    a duty of candor to the tribunal, and there is no authority for the proposition that a
4    plaintiff may conceal from a district court the fact that his federal claim has likely
5    become moot. Concealing the truth from the Court means the Court has no
6    occasion to consider or rule on the issue, and as a practical matter prevents the
7    Court from exercising its discretion at all.

8        Furthermore, concealing the truth and resisting the Court's efforts to uncover
9    it, as Plaintiff's counsel did, strongly suggests that the omission was not based on
10   a good-faith belief that the Court might exercise supplemental jurisdiction over their
11   state law claims. Rather, it implies that they knew the Court would likely not
12   exercise supplemental jurisdiction over those claims, and wished to forestall that.
13   District courts in this circuit generally dismiss supplemental state claims once an
14   ADA claim has become moot — though there is some disagreement about whether
15   supplemental jurisdiction is lacking or merely inappropriate. *See, e.g., Moore v.*
16   *Saniefar*, 2017 WL 1179407, at *8 n.3 (E.D.Cal., Mar. 29, 2017) (collecting cases).
17   The Court has told Plaintiff's counsel in other cases that it would not exercise
18   supplemental jurisdiction. Furthermore, as Plaintiff's counsel is aware, beginning
19   with *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025 (S.D.Cal., 2017), almost every
20   judge in this District has declined supplemental jurisdiction over state law claims,
21   as a matter of comity and to discourage forum shopping. *See Langer v. Phil's BBQ,*
22   *Inc.*, 2020 WL 6700509, slip op. at *1 (S.D.Cal., Nov. 13, 2020) (at the outset of
23   the case, declining supplemental jurisdiction over state claims); *Langer v. Honey*
24   *Baked Ham*, 2020 WL 6545992, slip op. at *7 (S.D.Cal. Nov. 6, 2020) (collecting
25   cases). Plaintiff's counsel's characterization of *Cuddeback* as a rarely-followed
26   and marginal outlier is baseless. They had no reasonable belief that the Court
27   would retain supplemental jurisdiction over state law claims when the ADA claim
28   had been moot since the inception of the case. Their  decision to continue litigating

18cv934-LAB (AGS)

/ / /

/ / /

under false pretenses drew out this litigation, and imposed costs and burdens on Defendants.[7]

The prosecution of this action was already improper, but grew worse this year. On February 14, 2020 the Court dismissed the amended complaint with leave to amend. As part of its ruling, the Court required that before he proceeded any further, Plaintiff, or someone acting on his behalf, had to visit Dave's Tavern and to confirm that he is still willing and able to return to Dave's Tavern.  If conditions in the tavern or parking lot had changed such that injunctive relief was no longer needed or available, or if Plaintiff no longer intended to return to the tavern, he was directed to dismiss his ADA claims. (Docket no. 18 at 5:1–5.) Plaintiff's counsel defied this order, filing a frivolous interlocutory appeal of the Court's non-final order of dismissal.

Immediately after they filed the appeal, the Court issued a reasoned order

---

[7] While Defendants might have found a way to let the Court know that Dave's Tavern was no longer in business, they are not at fault for drawing out the litigation. As soon as Defendants' counsel told Plaintiff's counsel about the closure, the latter had an obligation to investigate, confirm, and take appropriate steps to inform the Court before proceeding further. Plaintiff, not Defendants, invoked the Court's jurisdiction and was responsible for disabusing the Court of any false impression he had given. Even if Defendants had informed the Court of the closure, the result would have been the same. This case was at the pleading stage, which meant that the Court was accepting Plaintiff's allegations as true. As soon as the Court had a reason to question its jurisdiction, it was obligated to take steps to investigate. *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 278 (1977) (holding that a court is "obliged to inquire *sua sponte* whenever a doubt arises as to the existence of federal jurisdiction"). It would have done this by issuing the same order that it issued in this case, requiring Plaintiff to investigate and confirm that Dave's Tavern was still open and that he could and would visit it again as soon as barriers were removed.

(Docket no. 22) explaining why, under settled law, the notice of appeal did not deprive the Court of jurisdiction. The Court then reiterated its order to Plaintiff and made it even more explicit. This new order required that within seven days he or someone on his behalf visit Dave's Tavern and confirm that the tavern was still open and being operated by Gligora. The order made clear that this was jurisdictional, and that Plaintiff was not permitted to go forward with the case until the issue was settled. The Court warned counsel that continuing to prosecute claims for injunctive relief, either at the District Court level or on appeal, would be frivolous and would amount to a serious and sanctionable breach. (*Id.* at 3:14–20.)

Plaintiff and his counsel resisted and evaded the Court's order repeatedly, and the Court sanctioned two of the senior attorneys. (Docket no. 28.) Those sanctions were imposed to vindicate the Court's own orders, rather than to compensate Defendants. They were also imposed only on two senior attorneys, whereas the fee motion does not differentiate among counsel. For reasons set forth in the order imposing sanctions, and in this Order as well, it is clear Plaintiff's counsel as a whole acted in bad faith. They continued litigating claims they had every reason to believe were moot, and concealed this in order to prevent the Court from exercising its discretion to dismiss the supplemental state claims — and thus the entire case. They also knew this was costing Defendants money and imposing burdens on them. They had also turned down a settlement offer (*see* Docket no. 30–4 (Ex. C to Fee Mot.) at 3), which suggests they were holding out for a higher offer. In other words, they kept the case going in order to raise the value of the case and obtain more money from Defendants.

Because Plaintiff's counsel acted in bad faith, the Court can rely on its own inherent power, or § 1927, or both, to award fees. *See Girardi*, 611 F.3d at 1061; *B.K.B.*, 276 F.3d at 1107. Alternatively, the Court can rely on § 1927 to award costs and fees, because Plaintiff's counsel multiplied the proceedings unreasonably and vexatiously after the filing of the complaint. *See In re Keegan*, 78 F.3d at 435. The

1   ADA claim was frivolous, because counsel had reason to know it was moot, yet
2   continued to prosecute it as if it were not. They also represented to the Court that
3   Dave's Tavern was still open, that Gligora still owned it, that Plaintiff was ready
4   and willing to return and patronize it, and that injunctive relief was still needed to
5   bring the tavern into compliance with the ADA. They relied on these
6   representations to argue not only that the Court could and should exercise
7   supplemental jurisdiction over the state law claims, but that declining to exercise
8   supplemental jurisdiction would be improper. While doing this, they had good
9   reason to know that their state law claims would have been dismissed had they
10  not made these representations and arguments. It is apparent they did all these
11  things to extract a better settlement offer from Defendants, which is improper.

12      The Court concludes that an award of attorney's fees is proper under both
13  the Court's own inherent authority and under § 1927. The Court is not authorized
14  to award fees against the law firm itself under § 1927. *See Kaass Law v. Wells
15  Fargo Bank, N.A.*, 799 F.3d 1290, 1293–95 (9th Cir. 2015) (holding that § 1927
16  does not authorize fee awards against law firms). Holding Plaintiff's counsel
17  (specifically, the two senior attorneys the Court previously sanctioned) jointly and
18  severally liable is appropriate. The Court may, however, sanction the law firm,
19  Potter Handy, under its inherent authority. *See Haynes v. Home Depot USA, Inc.*,
20  800 Fed. Appx. 480, 487 (9th Cir. 2020) (recognizing that district court has inherent
21  authority to sanction a law firm). This would be appropriate because the violations
22  were assisted by other lawyers at the firm.

23      Plaintiff's counsel do not dispute Defendants' counsel's fee computation.
24  They ask, however, that any fees that are awarded be limited to fees for services
25  after they were notified that Dave's Tavern had closed. Assuming that the Court
26  decides to award fees, Plaintiff's counsel agree that a fee award of $6,440,
27  representing fees after the June 5 email, would be proper. They do not dispute any
28  other of Defendants' claims about reasonable billing rates or hours reasonably

expended, nor do they dispute Defendants' arguments about rates or the

/ / /

reasonableness of time expended after June 5. The Court will therefore treat those matters as admitted.

The exhibits show that after June 5, 2019 through the sanctions award, attorney Daniel Watts worked 6.1 hours on the case and paralegal Linda Koller worked 5.1 hours.  Attorney Daniel Watts also worked 6.5 hours on the fee motion, for a total of 12.6 hours. A third person, who may be a paralegal, clerk, or administrative worker, billed hours after June 5. However, the motion does not seek to recoup payment for those hours. The motion seeks to recover for several hours worked and billed by paralegal Julia Anderson, but that work was done before the June 5 notification. Watts' reasonable hourly rate is $450 and Koller's is $150. The total for their hours billed is $6,435, which is slightly below the amount Plaintiff's counsel agrees fairly represents Defendants' counsel's work after the June 5 notification.

**Conclusion and Order**

The motion for leave to amend is **DENIED**. For reasons discussed above, Plaintiff's ADA claim is moot, and the Court will not exercise supplemental jurisdiction over his state law claims.

The motion for attorney's fees is **GRANTED IN PART**.  The Court awards Defendants $6,435.00 in attorney's fees against Plaintiff's counsel and against their law firm. The firm as well as the two attorneys the Court previously sanctioned are jointly and severally liable for this award.

/ / /

/ / /

/ / /

/ / /

/ / /

1  / / /

2  / / /

3      With this order, all issues in the case have been fully adjudicated.  This

4  action is **DISMISSED** without prejudice, but without leave to amend. The Clerk is

5  directed to close the docket.

6

7      **IT IS SO ORDERED**.

8  Dated:  December 7, 2020

9

10                                          Hon. Larry Alan Burns
                                            Chief United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                                18cv934-LAB (AGS)